UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BARBARA U. UBEROI,

    Plaintiff,

v.                         CASE No. 8:14-CV-2321-T-TGW

FLORIDA SUPREME COURT,

    Defendant.

_____

## O R D E R

The plaintiff alleges that the Florida Supreme Court unlawfully denied her application to become a member of the Florida Bar in violation of her Fourteenth Amendment right to due process, and 11 U.S.C. 525, a statute that prohibits discrimination against bankruptcy debtors (Doc. 1). The defendant filed a motion to dismiss the plaintiff's complaint, arguing that the court lacks subject matter jurisdiction over these claims (Doc. 17). Because the plaintiff's claims are barred by the Eleventh Amendment, and her §525 claim is precluded under the Rooker-Feldman doctrine as well, the defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 17) will be granted.

The plaintiff is a 1998 graduate of Stetson University College of Law (Doc. 1-2, p. 2).[1] She submitted an application for admission to the Florida Bar in October 2010 (id.). The Florida Board of Bar Examiners ("the Board"), the administrative agency responsible for processing the plaintiff's bar application, conducted an investigation of the plaintiff, which revealed "information that reflected adversely upon the [plaintiff's] character and fitness" under the Rules of the Supreme Court Relating to Admissions to the Bar (id.; Doc. 1-3, ¶5).

On December 5, 2011, the plaintiff appeared for an investigative hearing, after which the Board determined that Specifications would be prepared and the plaintiff's character and fitness would be considered at a formal hearing (Doc. 1-2, p. 2). The Specifications identified the alleged conduct that reflected adversely on the plaintiff's character and fitness for Bar admission (id., pp. 3-7).

The Specifications asserted against the plaintiff fell into four categories: (1) "financial irresponsibility or a lack of respect for the law or the

---

[1] Citations correspond with the page numbers assigned by the CM/ECF docketing system.

rights of others"; (2) a lack of candor by the plaintiff in completing her Bar application; (3) a lack of candor by the plaintiff at the December 5, 2011, investigative hearing before the Board; and (4) a history of noncompliance with the plaintiff's prescribed treatment for her major depressive disorder (id., pp. 3, 8, 10, 11). In particular, Specification 1 detailed allegations of delinquency in payment to creditors; failure to file timely and pay state and federal taxes; the filing of a Chapter 13 bankruptcy petition; and the failure to make scheduled payments pursuant to the bankruptcy payment plan (id., pp. 3-4). Specifications 2 and 3 alleged that the plaintiff's averment to the Board that she could not meet her credit obligations due to loss of employment was false based on evidence that she and her husband had instead chosen to finance the building of a residence in India and make other purchases (id., pp. 4-6; 8-9).

The Specifications were served upon the plaintiff in May 2012, and she was advised that she was entitled to present at the formal hearing witnesses and any other evidence that might be pertinent to the issues raised in the Specifications (id., p. 2). The plaintiff filed an answer to the Specifications, and the formal hearing took place on November 17, 2012. The plaintiff was represented by counsel, and she testified at the hearing that

her husband was responsible for their financial problems (see id., pp. 2-3, 7). The plaintiff also proffered a medical report from Dr. Kenneth P. Pages regarding her mental state, telephonic unsworn statements from her brother-in-law and from a licensed mental health counselor, and testimony from attorney Andy Dogali, the plaintiff's employer (see id., pp. 11, 12, 13).

In February 2013, the Board issued its "Findings of Fact, Conclusions of Law, and Recommendation"(id., pp. 1-14). It found that the plaintiff had engaged in the misconduct alleged in Specifications 1, 2 and 3 (id., p. 14). Further, it found that the plaintiff had failed to establish rehabilitation (id.). Nevertheless, the Board stated that there were mitigating circumstances that did not disqualify the plaintiff from conditional Bar admission (id.). In this regard, the plaintiff entered into a Consent Agreement with the Board which set forth conditions of a probationary Bar admission in the event that the Florida Supreme Court adopted the Board's recommendation to conditionally admit the plaintiff to the Florida Bar (id., pp. 15-19).

The Board's recommendation was considered by all seven justices of the Florida Supreme Court. In a lengthy opinion, the Florida Supreme Court disapproved the Board's recommendation, and ruled that the

plaintiff could not reapply for admission to the Bar for a period of three years.

See Florida Board of Bar Examiners re: B.U.U., 124 So.3d 172 (Fla. 2013)

(Doc. 1-2, pp. 20-23). In this regard, it stated:

> ...[T]he Board found that the first three Specifications, which seriously impacted her character and fitness, were all proven. The Board found that there was mitigation evidence presented by Applicant. Importantly, the Board also found that Applicant's formal hearing presentation *failed* to establish rehabilitation by clear and convincing evidence as required by rule 3-13 of the Rules. Notwithstanding these findings, the Board inconsistently concluded that the total lack of proof of rehabilitation did not render Applicant unqualified for admission to the Bar. Surprisingly, and contrary to existing Florida law, the Board found that Specifications 1-3 even though clearly proven, were not disqualifying....

> Upon consideration of the findings of fact provided in the Report and Recommendation, this Court disapproves the Board's recommendation for conditional admission. Although Applicant attempted to provide explanations for some of her misconduct, the Bar must not become a haven for those who have clearly violated the law repeatedly and, in addition and further aggravation, provided information that is totally false, misleading, and lacking in candor. Applicant's refusal to repay her financial obligations, willful refusal to comply with state and federal law, and failure to provide full and complete candor in her application for admission call into serious question her judgment and ability to serve as an officer of our courts. Furthermore, we have held on multiple occasions

that the failure to timely file or pay income taxes, in particular, merits disbarment or a denial of re-admission to the Bar, and we will not provide an exception here....

Compliance with the requirements of all tax laws is an issue this Court has viewed, and continues to view, very seriously. We have consistently held that lawyers, as guardians of the law, have a very special obligation to not only honor but comply with the law, and this includes applicable tax laws. In this case we are not considering a single violation of law but a series of willful and flagrant refusals to obey the law together with a lack of candor and truthfulness....

...Any further consideration of this Applicant for admission may not occur until after three years from the date of this decision.

124 So.3d at 174-75 (emphasis in original). Three justices dissented, indicating that the decision was "too harsh." Id. at 175.

Additionally, the Florida Supreme Court stated that, "[n]o further rehearing will be entertained by this Court." Id. Thus, the plaintiff did not have argument before the Florida Supreme Court regarding its different view of the plaintiff's fitness for admission to the Florida Bar.

In September 2014, the plaintiff filed this complaint, alleging that the Florida Supreme Court's decision to deny her admittance to the Florida Bar was unlawful (Doc. 1-3, pp. 1-5). Specifically, the plaintiff

alleges in Count I that the defendant violated the plaintiff's Fourteenth Amendment right to procedural due process by rejecting the Board's recommendation to conditionally admit her to the Florida Bar "without seeking argument from the plaintiff as to the facts and law regarding whether, and to what degree, plaintiff's compliance with her financial obligations resulted from irresponsibility or hardship such that she is not qualified to practice law" (id., p. 3)(emphasis omitted). Count II alleges that the Florida Supreme Court improperly denied the plaintiff admission to the Florida Bar based on the fact that she had been a bankruptcy debtor, in violation of 11 U.S.C. 525(a) (id., p. 5).

The plaintiff requests a declaratory judgment that the "defendant violated the plaintiff's right to procedural due process," and to order the Florida Supreme Court to:

> reconsider its opinion after review of the plaintiff's presentation of facts and legal authority which establishes that the plaintiff's [lack of] compliance with her financial obligations does not establish her financial irresponsibility or an intent to defraud or violate the laws of the nation.

(id., p. 4)(emphasis omitted). In Count II of the complaint, the plaintiff seeks entry of "a preliminary injunction and a permanent injunction, restraining ...

the Supreme Court of Florida ... from refusing to grant plaintiff's application..." (id., p. 5).

The defendant, as indicated, responded by filing a Motion to Dismiss pursuant to Rule 12(b)(1), F.R.Civ.P., alleging the absence of subject matter jurisdiction over the plaintiff's claims pursuant to the Eleventh Amendment and the Rooker-Feldman doctrine (Doc. 17). The plaintiff filed a memorandum in opposition to the motion (Doc. 18). The parties also submitted, with leave of court, supplemental memoranda regarding the applicability of 11 U.S.C. 525 to this case (Docs. 27, 28).

Following consent, oral argument was held on the motion. The plaintiff was specially represented at the hearing by counsel, who stated that the plaintiff seeks a rehearing before the Florida Supreme Court regarding the denial of her Bar application. Defense counsel pointed out that the grant of a rehearing is a limited remedy for the purpose of identifying errors of law or misapplication of facts, none of which have been identified here. Thus, the defendant argued, a rehearing would present the same facts and legal background before the same justices and, therefore, there would be no basis for a different result.

II.

The defendant alleges that the plaintiff's complaint must be dismissed pursuant to Rule 12(b)(1), F.R.Civ. P., for lack of subject matter jurisdiction. Motions under this rule can be asserted on either facial or factual grounds. Carmichael v. Kellogg, Brown & Root Services, Inc., 572 F.3d 1271, 1279 (11th Cir. 2009). Facial challenges to subject matter jurisdiction are based on the allegations in the complaint and the attachments thereto. Id.; see Arthur v. Thomas, 674 F.3d 1257, 1265 (11th Cir. 2012)(documents attached to the complaint are considered part of the complaint for purposes of a motion to dismiss). When considering such challenges, the court must, as with a Rule 12(b)(6) motion, take the complaint's well-pled allegations as true. Carmichael v. Kellogg, Brown & Root Services, Inc., supra, 572 F.3d at 1279.

III.

A. Count I: "Declaratory Judgment – Procedural Due Process."

The plaintiff argues that the Florida Supreme Court violated her constitutional right to due process by failing to give her an opportunity to present argument before it regarding her fitness for admission to the Florida Bar following its rejection of the Board's recommendation (Doc. 1-3). The

plaintiff requests in her complaint that this court enter a declaratory judgment that the Florida Supreme Court violated her right to procedural due process, and order the Florida Supreme Court to "reconsider its opinion after review of the Plaintiff's presentation of facts and legal authority" (id., ¶22).

The defendant argues correctly that sovereign immunity precludes the court from exercising subject matter jurisdiction over this claim (Doc. 17). Thus, the Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.[2]

This sovereign immunity "extends to 'arms of the State,' including state courts and state bar associations." Caffey v. Alabama Supreme Court, 469 Fed. Appx. 748, 751 (11th Cir. 2012). See also Landers Seed Co. v. Champaign National Bank, 15 F.3d 729, 732 (7th Cir. 1994)("The Eleventh Amendment bars federal jurisdiction here since the Illinois Supreme Court itself is the named defendant..."); Capogrosso v. The Supreme Court of New

---

[2]It also bars lawsuits against a state brought by a citizen of that state. Caffey v. Alabama Supreme Court, 469 Fed. Appx. 748, 751 (11th Cir. 2012).

Jersey, 588 F.3d 180, 185 (3d Cir. 2009). Accordingly, the defendant argues that sovereign immunity bars the plaintiff's due process claim against the Florida Supreme Court.

The plaintiff argues that an exception to Eleventh Amendment immunity applies in this case (see Doc. 18). There are three possible exceptions: (1) a state may waive immunity by consenting to be sued in federal court, (2) Congress may abrogate the state's immunity through a valid exercise of its powers, and (3) under the doctrine of Ex parte Young, 209 U.S. 123 (1908), certain types of lawsuits are permitted against state officials. Va. Office for Prot. & Advocacy v. Stewart, —— U.S. ——, 131 S.Ct. 1632, 1638 (2011); Ex parte Young, 209 U.S. 123 (1908).

The plaintiff, citing to Ex parte Young, argues that Eleventh Amendment immunity does not apply to claims in equity against the state for a constitutional violation (see Doc. 18, pp. 1, 3 & n.2). Ex parte Young is a narrow exception to the Eleventh Amendment that allows federal courts to adjudicate "suits against state officers seeking prospective equitable relief to end continuing violations of federal law." Florida Assn of Rehabilitation Facilities, Inc. v. State of Florida, Dept. of Health and Rehabilitative Services, 225 F.3d 1208, 1219 (11th Cir. 2000). It is clear, however, that "when the

State itself is named as the defendant, a [law]suit ... is barred regardless of whether it seeks damages or injunctive relief." Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 101-102 (1984). See also Va. Office for Prot. & Advocacy v. Stewart, supra, 131 S.Ct. at 1638. Thus, as the Eleventh Circuit has summarized (Eubank v. Leslie, 210 Fed. Appx. 837, 844 (11th Cir. 2006)):

> State agencies ... are never subject to unconsented suit, even under the doctrine of Ex parte Young. Ex parte Young applies only when state officials are sued for prospective relief in their official capacity.

Therefore, Ex parte Young clearly does not apply here because the plaintiff sues only the Florida Supreme Court. Furthermore, the plaintiff seeks reconsideration of the denial of her application for admittance to the Florida Bar, which is not prospective relief.

The plaintiff, relying on a footnote from Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 374 n.9 (2001),essentially argues that Ex parte Young's application is extended to claims alleging a constitutional violation by a state (see Doc. 18, p. 3). This contention is meritless because the plaintiff misconstrues Garrett.

In Garrett, the Supreme Court held that sovereign immunity precluded monetary damages against a state agency for violating Title I of the

Americans with Disabilities Act (ADA). In the footnote relied upon by the plaintiff, the Supreme Court stated that its holding was not an absolute bar to relief against a state for violating the ADA and noted, in dicta, that the ADA is enforceable by the United States in actions for money damages, or by a lawsuit "by private individuals in actions for injunctive relief under Ex parte Young, 209 U.S. 123 (1908)." The plaintiff argued at the hearing that this footnote extends application of Ex parte Young to actions for injunctive relief against the states for violating the ADA and, therefore, should also apply to constitutional violations. However, Garrett does not purport to expand the applicability of Ex parte Young to claims against a state, whether it is a constitutional violation, or even a violation of the ADA. Rather, the Supreme Court merely indicated that a claim under Ex parte Young – i.e., a claim against a state official seeking injunctive relief–remains viable notwithstanding its holding in Garrett. If there is any doubt, the Supreme Court stated recently in Va. Office for Prot. & Advocacy v. Stewart, supra, 131 S.Ct. at 1638, that the doctrine of Ex parte Young "is limited to th[e] precise situation" when a claim is made against state officials for prospective relief, and it "does not apply when the state is the real, substantial party in interest." Therefore, Garrett clearly does not support the conclusion that the

Eleventh Amendment is inapplicable to the plaintiff's constitutional due process claim.

In sum, the defendant meritoriously argues that Eleventh Amendment immunity precludes this court from adjudicating count I of the plaintiff's complaint. The plaintiff, furthermore, has not identified any exception to sovereign immunity that applies in this circumstance. Therefore, count I of the plaintiff's complaint will be dismissed for lack of subject matter jurisdiction.

B. Count II: Injunctive Relief for Violation of 11 U.S.C. §525(a).

The plaintiff filed in March 2007 a petition under Chapter 13 of the Bankruptcy Code, and the bankruptcy was dismissed in March 2010 (Doc. 1-3, ¶¶2,7). The plaintiff alleges that the defendant impermissibly denied her Bar admission because of this bankruptcy. In this regard, the plaintiff requests the court to enter an injunction "restraining ... the Supreme Court of Florida ... from refusing to grant" her application for Bar admission (id., p. 5).

11 U.S.C. 525(a) is an anti-discrimination provision of the bankruptcy code. It provides that a "governmental unit may not deny ... a license ... [to] a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act ... solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the

-14-

Bankruptcy Act." The term "governmental unit" is defined to include a "State." 11 U.S.C. § 101(27).

The plaintiff argues that the Eleventh Amendment does not apply to the §525 count because "11 United States Code Section 106 specifically waives sovereign immunity" (Doc. 18, p. 1, see id., pp. 4-5). See 11 U.S.C. 106 ("sovereign immunity is abrogated as to a governmental unit ... with respect to the following ... Sections ... 106 ... 525 ..."). The plaintiff does not acknowledge, however, that the Eleventh Circuit held in 2004 that Congress's enactment of §106 was unconstitutional. In re Diaz, 647 F.3d 1073, 1083 (11th Cir. 2011)(citing In re Crow, 394 F.3d 918, 924 (11th Cir.2004)).

Further, the plaintiff has not shown that a different exception to sovereign immunity applies to this claim (see supra, p. 11(identifying the three exceptions to sovereign immunity)). The only exception to sovereign immunity not previously addressed is that a state may waive immunity by consenting to be sued in federal court. Va. Office for Prot. & Advocacy v. Stewart, supra, 131 S.Ct. at 1638. In this connection, the United States Supreme Court held that a state may be found to have waived its sovereign immunity regarding bankruptcy laws when the proceedings against it are "necessary to effectuate the in rem jurisdiction of the bankruptcy courts."

Century Va. Community College v. Katz, 546 U.S. 356, 378 (2006). The Eleventh Circuit refers to this theory as "consent by ratification." In re Diaz, supra, 647 F.3d at 1083. The United States Supreme Court cautioned, however, that this holding does not mean that "every law labeled a 'bankruptcy' law ... properly impinge[s] upon state sovereign immunity." Century Va. Community College v. Katz, supra, 546 U.S. at 378, n. 15. As the Eleventh Circuit explained in In re Diaz, supra, 647 F.3d at 1084:

> The applicability of the "consent by ratification" theory in a given case ... turns on whether the proceedings against the state qualify as "necessary to effectuate the in rem jurisdiction of the bankruptcy courts." [Century Va. Community College v. Katz, 546 U.S. 356, 378 (2006).] The Katz Court did not endeavor to define the range of proceedings that satisfy this standard. The Court's decision, however, does establish some parameters. To begin with, the Court provided guidance by setting forth the three critical in rem functions of bankruptcy courts: "[1] the exercise of exclusive jurisdiction over all of the debtor's property, [2] the equitable distribution of that property among the debtor's creditors, and [3] the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts." Id. at 363–64, 126 S.Ct. 990. At a minimum, then, a proceeding must directly relate to one or more of these functions in order to meet the "necessary to effectuate" standard. The Court also warned that not "every law labeled a 'bankruptcy' law could, consistent with the Bankruptcy Clause, properly impinge upon state sovereign immunity." Id. at 378

n. 15, 126 S.Ct. 990. In context, we interpret this to mean that some proceedings, although they may arise under the Bankruptcy Code, nevertheless lack a meaningful nexus to the bankruptcy courts' in rem jurisdiction and thus do not fall within the scope of the states' consent to suit. These guidelines provide a useful starting point for courts tasked with giving meaning to the "necessary to effectuate" standard and further refining the "consent by ratification" theory.

There is no reason to think that the plaintiff's action against the defendant regarding her law license request is necessary to effectuate the in rem jurisdiction of the bankruptcy court. Furthermore, the plaintiff, who has the burden of demonstrating that the court has subject matter jurisdiction, see OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002), has not made any attempt to show that this requirement has been met. The plaintiff, in fact, does not even mention consent by ratification. Therefore, the plaintiff has not shown that waiver, or any other exception to sovereign immunity, applies to allow the court to exercise subject matter jurisdiction over count II of her complaint.

Moreover, the defendant correctly argues that count II of the plaintiff's complaint is barred by the Rooker-Feldman doctrine (Doc. 17, pp. 3-4). Pursuant to the Rooker-Feldman doctrine, lower federal courts lack subject matter jurisdiction over claims seeking review of state court

judgments. Nicholson v. Shafe, 558 F.3d 1266, 1268 (11th Cir. 2009). Thus, the doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). See also Nicholson v. Shafe, supra, 558 F.3d at 1268.[3] The Eleventh Circuit explained:

> The doctrine applies both to federal claims raised in the state court and to those "inextricably intertwined" with the state court's judgment. It does not apply, however, where a party did not have a "reasonable opportunity to raise his federal claim in state proceedings." A claim is inextricably intertwined if it would "effectively nullify" the state court judgment, or it "succeeds only to the extent that the state court wrongly decided the issues."

Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009)(citations omitted).

See also Scott v. Frankel, __ Fed. Appx. __, 2015 WL 1501613 (11th Cir.).

Count II of the plaintiff's claim falls squarely into that category of cases for which the district court lacks jurisdiction under Rooker-Feldman.

------

[3] The parties cite to a four-factor test to determine the applicability of the Rooker–Feldman doctrine. However, as the Eleventh Circuit noted in Nicholson, this test is properly modified to reflect the Supreme Court's holding in Exxon Mobil. See 558 F.3d at 1272-75.

Thus, the plaintiff filed this federal lawsuit after the Florida Supreme Court issued its opinion denying her admission to the Florida Bar. The plaintiff alleges in her complaint injury caused by the Florida Supreme Court's decision (see Doc. 1-3, pp. 3-4), and that decision is a judicial proceeding to which the Rooker-Feldman doctrine applies. See Dale v. Moore, 121 F.3d 624, 626 (11th Cir. 1997). Further, the plaintiff in her complaint requests this court to review and reject the judgment of the Florida Supreme Court (see Doc. 1-3, p. 5). Thus, the plaintiff alleges that the Florida Supreme Court unlawfully denied her admission to the Florida Bar on the basis of her bankruptcy, and asks this court to enjoin the Florida Supreme Court "from refusing to grant [her] application" (id.). In sum, the plaintiff is "a state-court loser" complaining of injuries caused by a state court judgment that disapproved her application for admission to the Florida Bar, and that was rendered before she commenced this lawsuit. Accordingly, the Rooker–Feldman doctrine deprives this court of jurisdiction to consider the plaintiff's §525 claim. See Kirkpatrick v. Shaw, 70 F.3d 100, 102 (11th Cir. 1995)(quoting Berman v. Florida Bar of Board Examiners, 794 F.2d 1529, 1530 (11th Cir. 1986))("Federal district courts lack jurisdiction over claims, 'based on constitutional or other grounds, that a state court's judicial decision

in a particular case has resulted in the unlawful denial of admission to a particular applicant.'"). See, e.g., Doe v. Florida Bar, 630 F.3d 1336, 1341 (11th Cir. 2011) (stating that a lawyer's as-applied challenges to the Florida Bar's rules are clearly barred by Rooker-Feldman).

In fact, it is not necessary in this case to discuss the nuances of the Rooker-Feldman doctrine. This case is controlled by the Supreme Court's decision in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 1983). In Feldman, two applicants sought admission to the District of Columbia Bar. Each was denied admission by the District of Columbia Court of Appeals, which under federal law is considered the equivalent of a state supreme court. The applicants challenged their denials in federal district court. The United States held that a challenge in the lower federal courts was not authorized. The Supreme Court said (id. at 486 n. 16)(citation omitted):

> "Orders of a state court relating to the admission, discipline, and disbarment of members of its bar may be reviewed only by the Supreme Court of the United States on certiorari to the state court, and not by means of an original action in a lower federal court. The rule serves substantial policy interests arising from the historic relationship between state judicial systems and the members of their respective bars, and between the state and federal judicial systems."

Consequently, Feldman establishes that the plaintiff needed to seek relief from the United States Supreme Court, and not from this court.

The plaintiff argues that the Rooker-Feldman doctrine does not apply to this claim because she allegedly had "no opportunity to address the issues of §525(a) discrimination" (Doc. 18, p. 9). This contention is meritless.

In the first place, the plaintiff did have the opportunity to make that argument before the Board, and she unquestionably was placed on notice in the Specifications that her bankruptcy was an issue (see Doc 1-2, p. 4). Therefore, plaintiff's counsel could have chosen to argue in her answer to the Specifications, at the hearing before the Board, or both, that, under 11 U.S.C. 525, a decision to reject her application could not be made solely on the basis of the bankruptcy.

At the hearing before me, plaintiff's counsel argued that the plaintiff had no reason to mention §525 because the Board found mitigation. This contention is unavailing because the plaintiff did not know when the Specifications were issued, or at the time of the formal hearing, the extent to which the Board or the Florida Supreme Court would consider her bankruptcy, or that the Board would find mitigating circumstances which

mooted that issue. Therefore, the plaintiff's contention that she did not have an opportunity, or any reason, to address §525 at the state level is meritless. See Dale v. Moore, supra, 121 F.3d at 627 (the plaintiff had an opportunity to raise his ADA claim at the state level when the defendant was given notice of Specifications which detailed the alleged mental problem, and the Florida Supreme Court Rules allowed an applicant to file an answer to the Specifications in which he could have complained that the Board's consideration of his alleged mental illness violated the ADA).

In all events, as Feldman shows, the plaintiff had the opportunity to raise the contention by petition for writ of certiorari to the United States Supreme Court. However, Feldman establishes further that the plaintiff could not assert that issue by filing suit in this court.

The plaintiff also argued in her opposition memorandum that her §525 claim is not inextricably intertwined with the state court judgment (Doc. 18, p. 5). This contention is baseless.

A claim is inextricably intertwined if it would "effectively nullify" the state court judgment, or it "succeeds only to the extent that the state court wrongly decided the issues." Casale v. Tillman, supra, 558 F.3d at 1260. Count II of the complaint alleges that the Florida Supreme Court's

decision to deny her Bar admission was wrong, and she requests this court to "restrain[] ... the Supreme Court of Florida ... from "refusing to grant [her] application" (Doc. 1-3, p. 5). Thus, count II of the plaintiff's complaint unquestionably requires the court to decide an issue that is "inextricably intertwined" with the decision of the Florida Supreme Court and, further, requests a resolution that effectively nullifies the Florida Supreme Court decision. Therefore, the plaintiff's §525 claim is clearly inextricably intertwined with the Florida Supreme Court's decision and, pursuant to the Rooker-Feldman doctrine, the court lacks subject matter jurisdiction of count II of the complaint.[4]

## IV.

For the foregoing reasons, it is ORDERED:

1. That defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 17) is GRANTED, and the complaint is hereby DISMISSED.

---

[4] It is appropriate to add that, even though no Rule 12(b)(6), F.R.Civ.P., challenge was raised, count II does not assert a plausible claim for relief. As noted, 11 U.S.C. 525(a) prohibits a governmental unit from denying a license "solely" because a person has been a debtor under the Bankruptcy Act. In this case, the Florida Supreme Court gave primary weight to the plaintiff's failure to comply with the income tax laws. 124 So.2d at 174-75.

2. That the CLERK is directed to CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 20th day of May, 2015.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE